LAHEY et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 16, 1896.)

1. CUSTOMS DUTIES—CLASSIFICATION—TAMBOURED SASH CURTAINS.
    Tamboured sash window curtains, of cotton, in the piece, which require only cutting and hemming to make them technically window curtains, were dutiable, as similar articles to lace window curtains, under paragraph 373 of the act of October 1, 1890, and were not classifiable under the "countable clauses" of the cotton schedule (paragraphs 344–348), or as manufactures of cotton not specially provided for under paragraph 255.

2. SAME—TAMBOURED COTTON PILLOW SHAMS.
    Tamboured pillow shams, consisting of a fine cotton fabric, ornamented with figures and designs in tambour work, in general appearance very like embroidery, were dutiable at 60 per cent. ad valorem, under the description, "other similar tamboured articles," contained in paragraph 373 of the act of October 1, 1890, and not at 40 per cent. under paragraph 355.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was an appeal by Lahey & Duncan from a decision of the board of general appraisers, sustaining the action of the collector of the port of New York in respect to the classification for duty of certain imported goods. . The circuit court affirmed the decision of the board of general appraisers, and the importers appealed to this court.

Albert Comstock, for appellants.

James T. Van Rensselaer, Asst. U. S. Atty., for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The appellants imported, in March and April, 1893, into the port of New York, tamboured cotton pillow shams, and also tamboured cotton or muslin sash curtains in the

piece. Duty was assessed by the collector upon all these goods at 60 per centum ad valorem, under paragraph 373 of the tariff act of October 1, 1890. That paragraph reads as follows:

"Laces, edgings, embroideries, insertings, neck rufflings, ruchings, trimmings, tuckings, lace window-curtains, and other similar tamboured articles, and articles embroidered by hand or machinery, embroidered and hemstitched handkerchiefs, and articles made wholly or in part of lace, rufflings, tuckings, or ruchings, all of the above named articles, composed of flax, jute, cotton, or other vegetable fibre, or of which these substances or either of them, or a mixture of any of them is the component material of chief value, not specially provided for in this act, sixty per centum ad valorem: provided, that articles of wearing apparel, and textile fabrics, when embroidered by hand or machinery, and whether specially or otherwise provided for in this act, shall not pay a less rate of duty than that fixed by the respective paragraphs and schedules of this act upon embroideries of the materials of which they are respectively composed."

The importers protested against the action of the collector, upon the ground that the pillow shams were dutiable at 40 per cent., under paragraph 355 of the same act, and that the curtains or curtain material were dutiable at the rates respectively applicable thereto, in accordance with paragraphs 344 to 348 of the same act, or at 40 per cent. under said paragraph 355.

Paragraph 344, which is the first paragraph of the "countable clauses" portion of the cotton schedule, and which sufficiently illustrates the character of those clauses, is as follows:

"Cotton cloth, not bleached, dyed, colored, stained, painted, or printed, and not exceeding fifty threads to the square inch, counting the warp and filling, two cents per square yard; if bleached two and one-half cents per square yard; if dyed, colored, stained, painted, or printed, four cents per square yard."

Paragraph 355 is as follows:

"Cotton damask, in the piece or otherwise and all manufactures of cotton not specially provided for in this act, forty per centum ad valorem."

The board of general appraisers sustained the action of the collector, and the circuit court affirmed the decision of the board.

The sash window curtain material is imported in pieces of about 24 yards in length, and varying from 24 to 50 inches in width. The ornamentation by tambouring runs down the two sides of the piece, and does not extend across the ends. Different windows need sash curtains of different widths and lengths. Therefore, they are imported in the piece, and are cut off of the proper size to suit the requirements of the consumer, and, when hemmed, are ready for use. An article which is tamboured is not, technically, embroidered. A tambouring machine is a frame upon which the material is stretched, and the tambouring or ornamenting consists in carrying the thread through the material and bringing it back by one needle. In an embroidering machine, one set of needles carries the thread in one direction, and it is picked up and carried back by another set of needles.

Bearing in mind that, sometimes, tamboured window curtains, not in the piece, but separate articles, are imported, the chief question of fact which was dwelt upon by the appellants, upon this

branch of the case, was whether the merchandise was sash curtains or curtain material. One of the appellants, in reply to his counsel's inquiry whether the goods were curtains in the condition in which they were imported, bluntly replied, "I can't give you any further explanation than that the article is known and called a 'sash curtain.'" Upon his attention being further called to a distinction between curtains and curtain stuff, he said, "It is curtain material." The almost exclusive use of the goods is for sash curtains, though they are sometimes used for draperies, or curtains hanging from a ring or hook over a bed. We do not think that it is of importance, for the purpose of classification under the act of 1890, whether the merchandise is called sash curtains, or sash curtains in the piece, or sash curtain material. They are, in fact, sash curtains, which are imported in the piece for the sake of economy, and the convenience both of the importer and the consumer, are thereafter cut into the desired lengths, and, when cut, simply require hemming. Paragraph 373 treated of embroideries more elaborately than the preceding acts had done, and its intent was to place a high duty upon cotton, jute, and flax articles, and textile fabrics which were embroidered. But, in order that tamboured articles, similar to any of those which were particularly enumerated, should not escape upon the ground that tambouring and embroidering were different mechanical processes, or that commercial designations existed which placed a distinctive meaning upon laces and the other specified articles, the clause, "and other similar tamboured articles," was inserted after the specific enumeration. It is not doubted that tamboured detached sash curtains are similar articles to lace window curtains, and, in our opinion, tamboured sash window curtains in the piece, which require only cutting and hemming to make them, technically, window curtains, are similar articles to lace window curtains. The differentiation which would take this tamboured merchandise out of paragraph 373, because sash curtains in the piece are not similar to embroidered or lace window curtains, is not warranted by the broad scope of the paragraph.

The pillow shams were a fine cotton fabric, ornamented with figures and designs in tambour work, in general appearance very like embroidery, and are ornamental articles designed to drape a pillow or a bed. The appellants urgently direct the attention of the court to the collocation of the clauses in the paragraph, and that the clause, "other similar tamboured articles," precedes "articles embroidered by hand or machinery," and, therefore, must be limited to articles similar to those specifically described. Assuming that the tamboured article must be similar to those which are specified, and which precede the clause in question, a liberal construction is to be given to the word "similar," in order to carry into effect the intent of the paragraph. It was not the idea of congress to tie down dutiable tamboured articles, under this paragraph, to a close and exact similarity to those which are specifically named, and to broadly include all embroidered articles. Besides, the terms "laces" and "embroideries" have a wide scope; and, undoubtedly, classes

of lace articles and embroidered articles which are called "embroideries" resemble closely the ornamented draperies which are coverings for the pillow. The case of Hedden v. Robertson, 151 U. S. 520, 14 Sup. Ct. 434, has no controlling relation to the question here. The question in that case was whether the woven cloth known as "Madras Mulls" was dutiable under the "countable clauses," or as manufactured cotton not specially enumerated or provided for. The embroidery paragraph had no part in the controversy. If paragraph 373 did not apply to the merchandise which is the subject of this suit, then the conclusion of the supreme court in the Hedden Case would become important.

The decision of the circuit court is affirmed.