### MILNE et al. v. UNITED STATES.

(Circuit Court, S. D. New York. April 21, 1902.)

CUSTOMS DUTIES—CLASSIFICATION—CHARCOAL BAR IRON.

The words "bar iron," as used in paragraph 123 of the tariff act of 1897, which fixes the duty on such iron of certain dimensions, and the words "iron bars," as used in the last proviso of paragraph 124, which fixes the duty at a different and uniform rate on "all iron bars in the

manufacture of which charcoal is used as fuel," must be held to mean the same thing, in the absence of evidence showing that the term "bar iron" had a commercial meaning at the date of the passage of the act, and the two paragraphs must be construed together. As so construed, bar iron in the manufacture of which charcoal is used as fuel, of whatever dimensions, is dutiable under the proviso.

On Appeal by Importer from a Decision of the Board of General Appraisers affirming the classification for duty by the collector of certain imported merchandise.

Frederick C. McLaughlin, J. P. Tucker, and W. B. Coughtry, for importers.

Charles D. Baker, Asst. U. S. Atty.

COXE, District Judge. The merchandise in question consists of Swedish charcoal iron returned by the local appraiser as "charcoal bar iron" and "charcoal iron bars," the two terms being used interchangeably and being considered by the appraiser, apparently, as synonymous and equivalent expressions. The collector assessed duty under paragraph 123 of the act of 1897, which is as follows:

"Bar iron, square iron, rolled or hammered, comprising flats not less than one inch wide nor less than three-eighths of one inch thick, round iron not less than seven-sixteenths of one inch in diameter, six-tenths of one cent per pound."

The importers protested, insisting that duty should have been taken under the last proviso of paragraph 124 of the same act, which is as follows:

"Round iron, in coils or rods, less than seven-sixteenths of one inch in diameter, and bars or shapes of rolled or hammered iron, not specially provided for in this act, eight-tenths of one cent per pound: provided, that all iron in slabs, blooms, loops, or other forms less finished than iron in bars, and more advanced than pig iron, except castings, shall be subject to a duty of five-tenths of one cent per pound: provided further, that all iron bars, blooms, billets, or sizes or shapes of any kind, in the manufacture of which charcoal is used as fuel, shall be subject to a duty of twelve dollars per ton."

The discussion at the argument narrowed the controversy to the single proposition, namely, is the "bar iron" of paragraph 123 included in the words "iron bars" of the second proviso of paragraph 124?

The following propositions were conceded: First: That the two paragraphs must be read as one for the purposes of construction. The fact that the number 124 has, for convenience of reference, been placed before the words "round iron, in coils or rods," does not limit the proviso to those words and the words which follow them. Second: That if the second proviso had used the words "all bar iron" instead of the words "all iron bars" the position of the importers could not be successfully assailed. Third: That there is no evidence in the record to show that the term "bar iron" had a commercial meaning at and prior to the date of the passage of the tariff act.

Having in mind the natural dislike of counsel to be quoted as having conceded any statement of law or fact, it will, perhaps, be more accurate, and certainly more prudent, to say that the foregoing propositions were not seriously disputed at the argument.

Webster defines "bar iron" as "iron in long pieces, hammered or

rolled out of puddle balls which have been made out of pigs in a puddling furnace or forge." The Century Dictionary defines "bar iron" as "wrought iron rolled into the form of bars." There is no evidence in the record upon which the court can base a finding that there is a distinction in meaning between the "bar iron" of paragraph 123 and the "iron bars" of the second proviso. If such distinction existed in trade and commerce when the tariff act was passed it should have been shown by competent testimony. The ordinary dictionary meaning of words must govern in the absence of proof of commercial meaning. Starting then with the postulate that "bar iron" and "iron bars" mean the same thing in tariff nomenclature, there seems no escape from the proposition that the importers' contention is correct. They imported from Sweden iron bars made with charcoal as fuel, and the proviso says that "all iron bars" so made shall pay $12 per ton. It is difficult to perceive why they are not within the express terms of the proviso. It is thought that this construction is not only sustained by the rules of law applicable to the interpretation of statutes, but that it is consistent with the intention of congress and the previous rulings of the treasury department.

Since the argument an additional brief has been submitted for the respondent, but the court has been unable to find support in the record for many of the propositions advanced. As before stated, there is no evidence at all of commercial designation and a finding differentiating "bar iron" from "iron bars" in the language of trade and commerce would be absolutely without evidence to support it. On the contrary, the iron imported by the "Galileo" was returned by the appraiser as "charcoal bar iron, $^6/_{10}$c." And the identical merchandise imported by the "Consuelo" was returned by the appraiser as "charcoal iron bars, $^6/_{10}$c." The decision in Worthington v. Abbott, 124 U. S. 434, 8 Sup. Ct. 562, 31 L. Ed. 494, throws little light upon the present controversy. The facts were different and the law was different. The merchandise there in dispute was known in commerce as "nail rods," and was not known as "bar iron." The assumption that the court found, inferentially, that "bar iron" had a commercial meaning, does not aid the respondent, for the reason that there is no pretense that the court attempted to define that meaning. There is nothing in the Worthington Case which enables the court to say that the iron in controversy here is not described with perfect accuracy by the language of the second proviso as "iron bars."

The decision of the board is reversed.